UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

'07 APR 16 AM 9: 58

CLERK
SO. DIST. OF GA.

BRYAN LEE TOTTEN,

    Petitioner,

v.                        406CV115

TYUS MEADOWS, Warden,

    Respondent.

### ORDER

## I. INTRODUCTION

28 U.S.C. § 2254 habeas petitioner Bryan Lee Totten appeals this Court's Order and Judgment dismissing his petition.[1] Doc. # 20 (Order); # 21 (Judgment). Actually, Totten has filed no Notice of Appeal (NOA) but instead applies for a Certificate of Appealability (COA). Doc. # 22. The Court will construe his COA as an NOA and an implied motion for leave to appeal in forma pauperis (IFP). His IFP motion is examined under the pre-PLRA version of 28 U.S.C. § 1915. *Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998).

## II. ANALYSIS

Totten's COA application can be denied if it presents no procedural issue debatable among jurists of reason, *see Henry v. Dep't. of Corrections*, 197 F.3d 1361, 1364 (11th Cir. 1999), or otherwise fails to make a substantial showing that he has been denied a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Gordon v. Sec'y Dep't of Corr.*, ___ F.3d ___, 2007 WL 609788 at *1 (11th Cir. 3/1/07); 28 U.S.C. § 2253(c)(2).

In his Report and Recommendation (R&R), the Magistrate Judge (MJ) reviewed each of Totten's habeas claims and concluded that some were procedurally defaulted because Totten had failed to timely raise them in the pre-federal habeas review process, including during his direct appeal and state habeas proceedings. Doc. # 16 at 1-12. The rest were without merit. *Id.* at 12-19. Many claims turned on the failure of Totten's trial counsel to seek a jury charge on voluntary manslaughter during a trial that resulted in a jury verdict convicting him of felony murder and firearms charges. *Totten*, 276 Ga. at 199. That jury

> was authorized to find that on [1/7/95] appellant, who labored as a stevedore unloading ships in Savannah, drove with co-worker Timothy Munsey to a Savannah housing project to purchase crack cocaine. Isa Mohammed and Stanley Lovett saw the victim approach the passenger side of Totten's truck. They also observed appellant shoot the victim in the face as the victim lunged into the truck to snatch a $100 bill from Munsey. Munsey testified that appellant fired two shots at the victim while the victim was leaning into the truck attempting to snatch the money from Munsey. The victim later died of circulatory collapse resulting from the gunshot wound to his face. Appellant and Munsey returned to their hotel after the shooting and told co-workers about the incident. Thereafter, Munsey sought to have his bank in Florida replace the $100 bill, which was torn in half by the victim. After his arrest, appellant made a

---

[1] *See Totten v. State*, 276 Ga. 199 (2003), *habeas relief denied by Totten v. Meadows*, 2007 WL 628122 (S.D.Ga. 2/26/07) (unpublished).

"jail-house" confession to his cellmate, informing the cellmate that he had disposed of the murder weapon by throwing it off a bridge. Appellant's sister testified in his defense that appellant had been at their parents' residence on the night the victim was shot and killed.

Id. at 200.

The Georgia Supreme Court found that evidence constitutionally sufficient, *id.*, this Court found no habeas-level error, doc. # 16 at 15-17, 20, and Totten does not raise evidentiary insufficiency as a COA ground here.

But he does contend that this Court substantially erred (thus justifying a COA). First, he complains of this Court's deference to the state habeas court's opinion because it was ghostwritten by his adversary. Doc. # 23 at 2. However, in 1992 a

> Georgia Superior Court judge denied postconviction relief in a capital case in ... an order that named a witness who had never testified in the proceeding or had any relation to the case. This error and the marked similarity of the order to the Attorney General's brief in the case led to the discovery that the judge's law clerk had called the assistant attorney general handling the case and asked for an order denying the habeas corpus petition. The order had been "spit out by the word processors at the state attorney general's office without even correcting spelling errors and other mistakes that originally appeared in the state's ... reply brief." The judge signed the order without modification, not even noticing that he found "irrelevant" the testimony of a witness who never appeared. Nevertheless, the Georgia Supreme Court, in upholding the denial of relief, accorded the order no less deference than usual, despite the state's concession that it had written the order, and found immaterial the order's mistake concerning the witness who never testified.

S.B. Bright & P.J. Keenan, *Judges and the Politics of Death: Deciding Between the Bill of Rights and the Next Election in Capital Cases*, 75 B.U.L. REV. 759, 804 (1995) (footnotes omitted) (*citing Jefferson v. Zant*, 263 Ga. 316, 316-17 (1993) (order denying habeas corpus petition was not reviewable under less deferential standard than usual "clearly erroneous" standard, though court adopted state's proposed final order verbatim, where order was well-supported by citations to record and judge adopted order as his own)), *see also Gibson v. Turpin*, 270 Ga. 855, 867 (1999) ("The habeas court's adoption of a final order drafted by the state was not error").

Tellingly, Totten cites no federal habeas precedent authorizing this Court to accord the state habeas court no deference merely on ghostwriting grounds. In fact, this Court's "review of a final state habeas judgment pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ('AEDPA'), is greatly circumscribed and highly deferential to the state courts." *Stewart v. Sec'y, Dep't of Corr.*, 476 F.3d 1193, 1208 (11th Cir. 2007) (quotes and cite omitted). Thus,

> § 2254(e)(1) sets a deferential standard of review for factual determinations made by a state court, stating that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28

U.S.C. § 2254(e)(1); *Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1303 (11th Cir.2005), *cert. denied*, ___ U.S. ___, 126 S.Ct. 2356, 165 L.Ed.2d 283 (2006).

*Id.* In that respect,

> § 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) ... *contrary to*, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) ... based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Marquard*, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision.

*Id.* (emphasis added). "Contrary to" is a very specific term:

> To be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing rule set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir.2001).

*Gilliam v. Sec'y for Dep't of Corr.*, ___ F.3d ___, 2007 WL 654269 at * 2 (11th Cir. 3/6/07).

Nowhere in these standards is authority granted to federal courts to accord less deference to ghostwrittten, state habeas court orders merely because they have been ghostwritten. Judicial laxity may supply grounds for public criticism, but not habeas relief. Habeas petitioners must cite actual, § 2254(d)-level error, not mere distastefulness. Accordingly, the Court rejects Totten's invitation to accord less deference here.

The state trial court appointed Totten new counsel at the conclusion of his trial, and that replacement lawyer raised ineffective assistance of counsel (IAC) claims against trial counsel. Doc. # 23 at 4-5. Totten says that at that time he became "more active in the defense of his [own] case," and thus filed his own pleadings when post-trial counsel refused to advance Totten's own contentions. Doc. # 23 at 4-5. Petitioner thus complains that he was forced to choose between going *pro se* and being represented. *Id.* One point he does not dispute, however, is that he nevertheless elected to remain represented.[2] He now faces procedural default on claims he would have preferred to

---

[2] Unless the litigant is himself an attorney, Georgia allows defendants like Totten to proceed at trial and thereafter either *pro se* or with the assistance of counsel. Otherwise, no hybrid representation is permitted. *See Seagraves v. State*, 259 Ga. 36, 38-39 (1989). Because Totten decided to remain represented, he cannot now claim to be deprived of any constitutional right merely because he at the same time tried to represent himself. He simply had no right to hybrid representation. *Cotton v. State*, 279 Ga. 358, 361 (2005).

Federal courts, for that matter, follow the same rule. *See, e.g., Mitchell v. Senkowski*, 2006 WL 1085171 at * 1 (N.D.N.Y. 2006) (denying *pro se* civil rights plaintiff's Rule 60(b) motion, following adoption of R&R, because plaintiff was still represented by counsel and court did not permit hybrid representation) (unpublished); *Von Longmore v. South Carolina*, 2005 WL 4797180 at * 3 (D.S.C. 2005) ("[C]ounsel cannot serve as a mere conduit for *pro se* documents") (quotes and cite omitted) (unpublished).

raise but his counsel did not. *Id.*

All of this, he says, figured into his claim that he was entitled to a state habeas court evidentiary hearing on his post-trial counsel's ineffectiveness. Because the state habeas court denied him that, and now this Court has done likewise, this Court erred to the point where granting a COA is warranted. Doc. # 23 at 7-8.

Totten forgets, however, that

> [i]n order to be entitled to a COA, a petitioner who was denied habeas relief on a procedural ground must show not only that one or more of the claims he has raised presents a substantial constitutional issue, but also that there is a substantial issue about the correctness of the procedural ground on which the petition was denied.

*Gordon*, 2007 WL 609788 at * 1. Totten does not even hint at what such a hearing would have shown, much less how that purported showing would demonstrate a substantial constitutional issue, or substantial issue about the correctness of the procedural ground on which his petition was denied. This COA ground thus fails.

Totten next complains that this Court erred in finding that he procedurally defaulted his claim that both his trial and appellate lawyers were ineffective for failing to request a jury instruction on voluntary manslaughter when the trial evidence clearly supported that charge. Doc. # 23 at 8-10.

As the MJ noted, Totten raised fourteen IAC claims[3] on his direct appeal. Doc. # 16 at 9. He challenged several aspects of his trial counsel's performance, but he did *not* contend that his attorney was ineffective for failing to request that the trial court instruct the jury on the lesser charge of voluntary manslaughter. *Id.*

The R&R concluded that Totten has shown no cause or prejudice for his procedural default on that claim, nor demonstrated his "actual innocence," either before the state court or this Court. Thus, he has shown no basis for excusing his procedural default. Doc. # 16 at 11-12. The R&R further noted that Totten then claimed his appellate counsel was ineffective; however, that afforded Totten no cause to relieve the procedural default:

> Petitioner raised several enumerations of ineffective assistance of appellate counsel in his state habeas corpus petition. *See* Resp. Ex. 1. The state court evaluated petitioner's contentions under the [IAC] standard and found that petitioner's appellate counsel advanced each claim of ineffective assistance of trial counsel that petitioner suggested and explored each of the claims in a lengthy hearing on petitioner's motion for new trial. Resp.

---

[3] In order to succeed on [an IAC] claim, [Totten] must show both that his lawyer's actions fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. This two-pronged test requires a showing of deficient performance and prejudice as a result of that deficiency. [Courts] can evaluate either the prejudice or the performance prong first and, if either one cannot be met, [Totten's] claim must fail.

*Dingle v. Sec'y for Dep't of Corr.*, ___ F.3d ___, 2007 WL 686600 at * 6 (11th Cir. 3/8/07) (quotes and cites omitted).

4

Ex. 3 at 13. The court found that petitioner was fully aware of every claim asserted in the motion for new trial and on appeal, and participated in those claims with his appellate attorney. *Id.* The court found that petitioner's appellate attorney brought certain claims only at the behest of petitioner. *Id.* The court specifically found that petitioner's appellate counsel "did not raise any jury charge issues because he did not perceive there to be any." Id. at 14. The court continued, "[m]uch of what Petitioner complains about could be considered sound trial strategy by trial counsel and therefore not fruitful grounds for an ineffective assistance of trial counsel claim.... [Petitioner's appellate counsel] performed reasonably and represented Petitioner zealously." *Id.* Accordingly, the court concluded that petitioner had failed to meet his [IAC] burden....

Doc. # 16 at 14-15. This Court agreed with the R&R. Doc. # 20. The "state habeas court correctly applied [IAC precedent] in its evaluation of petitioner's claims of ineffective assistance of appellate counsel and concluded that his appellate counsel provided effective representation on appeal. The court's decision is not contrary to, or an unreasonable application of, any Supreme Court precedent, and consequently petitioner's claim for relief on this ground is without merit." Doc. # 16 at 15.

Totten's only response to all of this is to emphasize that, before the MJ, he had proceeded *pro se* (though he is now represented by counsel), *see* doc. # 23 at 11, so therefore this Court should construe his pleadings liberally. *Id.* at 9-10. But there is a difference, on the one hand, in giving *pro se* litigants the benefit of the doubt when something they write is inelegant, and, on the other hand, *filling in legal gaps* in their analysis. *See, e.g., St. John v. U.S.*, 54 F.Supp.2d 1322, 1323 (S.D.Fla. 1999) (court is not required to abrogate basic pleading essentials or conjure up unpled allegations simply because plaintiff is proceeding *pro se*). As Totten's current attorneys know, the IAC standards are quite minimal, *see supra* n. 3, and it is telling that these attorneys cite no precedent to support this particular COA issue.

Finally, Totten cites this Court's error in finding that he did not demonstrate his actual innocence of murder, when the trial evidence clearly supports a voluntary manslaughter charge. Doc. # 23 at 8. This confuses the issue. Again, Totten failed to show cause and prejudice for procedurally defaulting his IAC claim that his counsel was ineffective for failing to request a voluntary manslaughter charge at trial. To surmount that procedural default, Totten has to show (for the actual-innocence predicate) that, "in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him [of anything but murder]." *Evans v. U.S.*, 2007 WL 595248 at * 1 (11th Cir. 2/27/07) (unpublished). But as

> the Supreme Court stated in *Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000), "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.* at 437.

*Johnson v. Terry*, 2007 WL 1021401 at * 6 M.D.Ga. 4/2/07) (unpublished). Here Totten fails to make even the basic showing that no reasonable juror would have convicted him of anything but murder. Eyewitnesses testified that he shot the victim *in the face* and killed him. Petitioner does not cite any grounds to disregard this evidence, so he obviously fails to

satisfy the basic cause and prejudice requirement here. This COA ground thus also fails.

## III. CONCLUSION

The Court construes habeas petitioner Bryan Lee Totten's COA (doc. # 23) as an NOA and an implied motion for leave to appeal in forma pauperis (IFP). Both are **DENIED**.

This 16 day of April, 2007.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA.